IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| RUBY A. STULTZ, ) | |
| ) | |
| Plaintiff, ) | Case No.: 4:15-cv-00055 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WAL-MART STORES, INC. and ) | By: Hon. Jackson L. Kiser |
| WAL-MART STORES EAST, L.P., ) | Senior United States District Judge |
| Defendants. ) | |

On September 2, 2015, Plaintiff Ruby A. Stulz ("Plaintiff") filed a state negligence action against Wal-Mart Stores, Inc., and Wal-Mart Stores East, L.P., ("Defendants") in Henry County Circuit Court. (Compl., Sept. 2, 2015 [ECF No. 1–2].) Defendants filed a Notice of Removal prior to service on December 10, 2015. [ECF No. 1.] In their Answer, Defendants allege that Plaintiff's injuries were caused by her contributory negligence. (Answer pg. 3, Dec. 15, 2015 [ECF No. 8].) Defendants moved for summary judgment on August 31, 2016. (Mot. for Summ. J., August 31, 2016. [ECF No. 15.] The matter was fully briefed, and the parties appeared for oral argument on the Motion on September 22, 2016. Having considered the briefs and the arguments of the parties, the matter is now ripe for disposition. For the reasons stated below, Defendants' Motion for Summary Judgment will be denied.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[1]

On October 6, 2013, Plaintiff drove her car to the Wal-Mart Supercenter, located at 976 Commonwealth Boulevard in Martinsville, Virginia, to buy yarn for her granddaughter. (Dep. of Ruby A. Stultz 21:23-25, 22:23-23:2, June 24, 2016 [ECF No. 16–3] (hereinafter "Pl's Dep.")

---

[1]Because this matter is before the Court under Federal Rule of Civil Procedure 56, the facts are recited in the light most favorable to Plaintiff, the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007).

- 1 -

Plaintiff arrived at approximately 12:47 p.m. and entered through the Tire and Lube Express ("TLE") entrance, where oil changes and vehicle maintenance are performed. (Id. at 25:22–26:9.) Plaintiff was a regular customer of this Wal-Mart and had used this entrance several times prior to the incident which gave rise to the present litigation. (Pl. Interrogatory Answers and Req. for Produc. ¶ 1, June 21, 2016 [ECF No. 16–2] (hereinafter "Pl.'s Interrog.").) The door to the TLE is solid but has a window, giving a view into the customer area of the TLE. On the day of the incident, however, a piece of a paper was posted to the window, partially obscuring the view through the window, "meaning that a customer could not see through the glass to the floor below." (Br. in Opp'n to Defs.' Mot. for Summ. J. ¶ 4, Sept. 8, 2016 [ECF No. 19] (hereinafter "Pl's Br.").)

A security camera located in the TLE customer area captured the incident. (See Br. in Supp. of Def.'s Mot. for Summ. J. (hereinafter "Defs.' Br.") Ex. 4, Aug. 31, 2016 [ECF No. 16-4] (hereinafter "Surveillance Tape").) At approximately 12:10:40 p.m., one of Defendants' employees placed two wooden pallets near the entryway of the TLE customer area. At approximately 12:47:54 p.m., Plaintiff, dressed in a pink shirt, approached the door from the outside. (Pl.'s Dep. 26:10–26:12; Defs.' Br. Ex. 5 [ECF No. 16–5].) Plaintiff stated in her Response that the pallets "were located approximately one step in front of the door as it opens." (Pl.'s Br. ¶ 5.) On the video, however, Plaintiff took three steps before she tripped over the pallets and fell to the ground. (Surveillance Tape 12:47:57–12:48:02 p.m.) When she fell, both her knees hit the ground simultaneously, and she caught herself with her hands. (Pl.'s Dep. 45:15–45:25.)

Plaintiff concedes she was not looking down as she entered. She claims "she was distracted as she was looking over to the customer counter to her left, and this distracted her view of what was immediately at her feet as the door opened." (Pl.'s Br. ¶ 7.) Plaintiff stated that the blue pallets were noticeable against the white floor "[i]f you're looking down while you're walking." (Pl.'s Dep. 43:4–7.) The solid door, coupled with the paper sign posted in the door's window, prevented her from seeing the pallets. (Pl.'s Interrog. ¶ 1.) Instead, Plaintiff was looking to her left, towards the cash registers, hoping to see a Wal-Mart employee to direct her to the yarn section. (Pl.'s Dep. 40:24–41:8.) Plaintiff was using a cane at the time as a result of a workplace accident in 2010. (Pl.'s Dep. 17:16–18:2, 45:10–12; Pl.'s Interrog. ¶ 2.)

For approximately six minutes after her fall, Plaintiff paced around the TLE customer area, presumably looking for an employee. (Surveillance Tape 12:48:00-12:54:00 p.m.) Eventually, Robert Vaughn, a Shift Manager, came to speak with her. (Aff. of Robert Vaughn, August 19, 2016 [ECF No. 16–6] (hereinafter "Vaughn Aff.").) Plaintiff declined to have store personnel call 911 for an ambulance. (Pl.'s Dep. 60:10–18.) Plaintiff completed her purchase with the assistance of a Wal-Mart manager, who escorted her throughout the store. Another employee escorted Plaintiff to her vehicle. (Pl's Dep. 61:13–20.) It is unclear whether Plaintiff requested this assistance. Plaintiff drove herself home and called her friend, a Registered Nurse, to take her to the hospital. (Pl.'s Dep. 60:19–61:3.) Plaintiff alleges that she was "seriously and permanently injured about her head, neck, body and extremities" as a result of her fall. (Compl. ¶ 5.)

After the incident, Vaughn reviewed the video surveillance and affirmed that thirteen individuals walked into the TLE customer area through the same door as Plaintiff, and that none tripped over the pallet. (Vaughn Aff. ¶¶ 5–6.) Plaintiff counters that two of the individuals who

- 3 -

Case 4:15-cv-00055-JLK-RSB   Document 26   Filed 10/04/16   Page 3 of 12   Pageid#: 163

came through the door walked through twice, bringing the actual total to eleven separate persons. One individual appeared not to notice the pallets until her foot hit the stack, causing her to quickly change direction to avoid the pallets. (Surveillance Video 12:14:13–:21 p.m.) Vaughn had the pallets removed shortly after speaking with Plaintiff. (Surveillance Video 1:07:15 p.m.; Vaughn Aff. ¶ 3.)

Plaintiff originally filed this action on September 2, 2015, in Henry County Circuit Court. Prior to being served, Defendants filed a Notice of Removal on December 10, 2015, based on diversity jurisdiction under 28 U.S.C § 1332. In her Complaint, Plaintiff alleged that Defendants' employee negligently placed wooden pallets near a customer entryway, causing her to trip over the pallets and injure herself. (Compl. ¶¶ 2–4.) On August 31, 2016, Defendants filed a motion for summary judgment, arguing Defendants met the proper standard of care, and Plaintiff's injuries were caused by her own contributory negligence. Plaintiff filed a response on September 8, 2016 (see Pl.'s Br.), Defendants filed a Reply (Defs.' Reply Br. in Supp. of Mot. for Summ J., September 15, 2016 [ECF No. 22] (hereinafter "Defs.' Reply Br.")), and the parties argued Defendants' Motion on September 22, 2016.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the facts, and the inferences to be drawn from them, in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict in their favor. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 252 (1986). The court must not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

The moving party has the initial burden of pointing out the deficiency in the non-movant's case that would make it impossible for a reasonable fact-finder to return a verdict in the non-movant's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A movant-defendant may show that he is entitled to judgment as a matter of law by demonstrating that the plaintiff could not prove an essential element of his case. Id. at 322–23. It is then up to the non-movant to demonstrate to the court that there are genuine issues of material fact, and that he has made a sufficient showing on each of the essential elements of his case. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Therefore, summary judgment is appropriate when the moving party points out a lack of evidence to support an essential element of his or her claim. See Blair v. Collonas Shipyards Inc., 52 F. Supp. 2d 687, 692 (E.D. Va. 1999), aff'd 203 F.3d 819 (4th Cir. 2000).

In a diversity case, a federal court must apply the substantive law of the forum state. See generally Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Therefore, the Virginia law applicable to slip-and-fall cases governs this case. Logan v. Boddie-Noell Enter., Inc., No. 4:11-cv-8, 2012 WL 135284, at *4 (W.D. Va. January 18, 2012).

### III. DISCUSSION

The facts in this case are generally undisputed. Both parties agree that the pallets, placed by one of Defendants' employees, presented a hazard, and that Plaintiff tripped over the pallets, injuring herself. Therefore, there are two contested issues remaining among the parties: (1) whether the pallets on the floor of the TLE Customer Area constituted an "open and obvious"

hazard; and (2) whether Plaintiff's failure to see and the pallets constituted contributory negligence.

  A. "Open and Obvious" Hazard

As mentioned above, in a diversity case, the substantive law of the forum state is controlling. Erie R.R. Co., 304 U.S. 64. In Virginia, a business owner is required:

> to have the premises in a reasonably safe condition for [a customer's] visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it was unknown to her, but was, or should have been, known to the defendant.

Colonial Stores, Inc. v Pulley, 125 S.E.2d 188, 190 (Va. 1962). A business owner, however, is not required to warn customers when "the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety." Fultz v. Delhaize America, Inc., 677 S.E.2d 272, 274 (Va. 2009); see also O'Brien v. Everfast, Inc., 491 S.E.2d 712, 715 (Va. 2009) ("A business invitee has the duty to be aware of open and obvious dangers."); Restatement (Second) of Torts § 343A cmt. b (Am. Law Inst. 1965) ("'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man . . . exercising ordinary perception, intelligence, and judgment."). This Court has previously surveyed Virginia case law and found that, while solid tripping hazards are more likely to constitute an open and obvious danger, "there is no bright line test." Logan v. Boddie-Noell Enterprises, Inc., No. 4-11-cv-8, 2012 WL 135284, at *9 (W.D. Va. Jan. 18, 2012).

Boxes in the middle of a shopping aisle have generally been found to be open and obvious hazards. See, e.g., Cameron v. K Mart Corp., No. 3:09-cv-81, 2010 WL 2991014, at *3 (W.D. Va. July 30, 2010) (finding boxes between sofas in a furniture aisle to be open and obvious); West v. City of Portsmouth, 232 S.E.2d 763, 767 (Va. 1977) (finding boxes in a six-

foot wide aisle to be open and obvious); Gottlieb v. Andrus, 104 S.E.2d 743, 747 (Va. 1958) (holding that boxes in an aisle were open and obvious regardless of whether they were six feet down the aisle or at the plaintiff's feet.). In contrast, a six-inch drop-off directly behind an unmarked door was not considered to be open and obvious as a matter of law. City of Suffolk v. Hewitt, 307 S.E.2d 444, 449 (1983).

The present case falls somewhere between Gottlieb, where the plaintiff tripped over a box in a wide, well-lit aisle, and Hewitt, where the hazard was a six-inch drop off immediately past a solid, unmarked door. Defendants claim that Hewitt distinguished itself from Crocker v. WTAR Radio Corp. where the plaintiff fell after walking "two steps" on an uneven theatre floor. 74 S.E.2d 51, 52 (Va. 1953). But the court in Crocker allowed the contributory negligence issue to reach a jury. In other words, the "two steps" the plaintiff took before falling did not establish contributory negligence as a matter of law. The pallets in this case were blue and stuck out against a light-colored floor, but it is unclear whether they were visible through the TLE door's partially-covered window. On the Surveillance Tape, there are approximately three seconds between when Plaintiff first begins to open the door and when Plaintiff falls. She had barely enough time to orient herself as to her surroundings. I cannot conclude, as a matter of law, that Plaintiff saw, or in exercise of reasonable care should have seen, the pallets.

Defendants point out that thirteen[2] customers came through the door without tripping over the pallet, but this does not settle the issue. In Little Creek Inv. Corp. v. Hubbard, the plaintiff was walking behind "three or four" of her co-workers before tripping on a muffler left on a sidewalk. 455 S.E.2d 244, 246 (Va. 1995). No one else tripped. A security guard described the muffler as being in "plain sight." Id. at 248. The court did not find this fact dispositive. Id. at

---

[2] As previous noted, two of the individuals entering the TLE Customer Area before Plaintiff came through a second time. Thus, only eleven people seem to come through the door. This makes little difference.

- 7 -

250. Defendants also argue that, because Plaintiff testified that she did not look through the TLE door's window, she "cannot now be heard to say her view of the pallets was obstructed." (Defs.' Reply Br. 3). The open and obvious standard, however, is objective. See Hewitt, 307 S.E.2d at 447 ("An owner is required to give notice or warning of an unsafe condition known to him and unknown to his invitee unless the dangerous condition is open and obvious *to a reasonable person exercising ordinary care*." (emphasis added)). The specific actions of Plaintiff do not resolve whether a reasonable person would find the pallets to be an open and obvious hazard.

Viewing the facts of this case in the light most favorable to Plaintiff, it appears that reasonable minds could disagree as to whether pallets located a few steps past a door with a partially obscured window were open and obvious. As a result, Defendants' Motion for Summary Judgment on this issue will be denied.

      B.      Contributory Negligence

In Virginia, contributory negligence is an absolute bar to recovery. Hall v. DLC Mgmt. Corp., No. 7:11-cv-298, 2013 WL 1743865, at *5 (W.D. Va. April 23, 2013) (citing Smith v. Virginia Elec. & Power Co., 129 S.E.2d 655, 659 (Va. 1963)). While the contributory negligence analysis and the open and obvious analysis are similar, they are not the same. The latter is focused on the hazard, and the former is concerned with the plaintiff's conduct. Id.

A plaintiff who trips and falls because of an open and obvious hazard is contributorily negligent as a matter of law. Rocky Mount Shopping Ctr. v. Steagall, 369 S.E.2d 193, 194 (Va. 1988). A plaintiff can be contributorily negligent even if she did not see an open and obvious hazard. Id. Contributory negligence is an objective test, asking whether "a plaintiff failed to act as a reasonable person would have for [her] own safety under the circumstances." Artrip v. E.E. Equip. Co., 397 S.E.2d 821, 824 (Va. 1990). "The relevant standard, therefore, is essentially a

- 8 -

Case 4:15-cv-00055-JLK-RSB   Document 26   Filed 10/04/16   Page 8 of 12   Pageid#: 168

totality of the circumstances test." Logan, 2012 WL 135284, at *9. The Virginia Supreme Court has declined to hold that a person's "failure to look down while stepping forward must constitute contributory negligence in every case." Little Creek, 455 S.E.2d at 246.

A party's negligence will rarely be so clear-cut that it can be resolved as a matter of law. "Ordinarily, negligence is a jury issue. Its determination requires the sifting and evaluation of facts, which are matters exclusively within the province of a jury." Stevens v. Ford Motor Co., 309 S.E.2d 319, 322–23 (Va. 1983); see also Ponirakis v. Choi, 546 S.E.2d 707, 711 (Va. 2001) ("Generally, an issue whether plaintiff is guilty of contributory negligence is a question of fact to be decided by the trier of fact."); Artrip 397 S.E.2d at 823 ("Contributory negligence and assumption of risk likewise are jury issues unless reasonable minds could not differ about their resolution."). Unless reasonable minds could not differ over whether Plaintiff was negligent and whether that negligence was a proximate cause of the accident, the issue is inappropriate for summary judgment.

Defendants argue that, because Plaintiff admitted to looking to her left, towards the register counter, rather than directly in front of her, she is guilty of contributory negligence. This cannot be the case. It would require a finding that it is *per se* unreasonable for a patron to look around for an employee as she enters a store. Although the Supreme Court of Virginia has occasionally held that tripping over an object without looking down constitutes contributory negligence, it has not always done so. As previously discussed, the court in Gottlieb held that by tripping over a box in the middle of a six-foot wide, well-lit aisle, the plaintiff was guilty of contributory negligence as a matter of law. 104 S.E.2d at 747. Similarly, in Tazewell Supply Co. v. Turner, the plaintiff was guilty of contributory negligence as a matter of law after she tripped

over a box she failed to see. 189 S.E.2d at 350. Admittedly, the facts in Tazewell Supply are similar to those of the present case:

> [T]he plaintiff said that had she been looking she would have seen the box. She was asked if she ever saw the box and responded: "No, sir, if I had been looking down I would have seen it, but I was looking at the things hanging up over there." . . . The testimony of [the plaintiff's sister] was equally as damaging in showing contributory negligence by the plaintiff. She testified that she had no trouble whatsoever in seeing the box on two occasions although she was not looking for it either time. She further said that she had no trouble in avoiding the box when she made her right turn into the cross aisle where the box was located.

Id. The court relied heavily on the ruling in Gottlieb, noting that the two cases were "strikingly similar." Id.

Tazewell notwithstanding, a failure to look down while walking is not a dispositive fact. In Hewitt, the plaintiff missed the drop-off, in part, because she was not looking down as she was walking. 307 S.E.2d 444, 449. The court, however, held that failing to look down was "one of many facts to be considered." Id. The Supreme Court of Virginia held in Little Creek that, in addition to finding that the stray muffler was not an open and obvious hazard, a plaintiff's failure to see the muffler was not contributory negligence as a matter of law. 455 S.E.2d 248. The plaintiff was walking behind a group of co-workers, and the weather was "dark, rainy, and very windy." Id. at 248. Many of the plaintiff's co-workers, however, had seen the muffler earlier in the day, and a security guard described the muffler as being in "in plain view." Id. In weighing these competing factors, the court held that "reasonable people could disagree as to whether [the plaintiff's] actions complied with her duty of ordinary care." Id. at 247.

In Tazewell Supply, the plaintiff not only admitted that she failed to look down as she was walking, but also that she was looking up at "Christmas seals" as she made her way through the store. 189 S.E.2d at 348. She fell after being in the store for "20 to 30 minutes," and her sister

had noticed the box on the floor twice. Id. at 348–49. There was no evidence that the box was concealed in any way and, based on her sister's testimony, the plaintiff missed two opportunities to see the box. 189 S.E.2d at 348–49. The court in Gottlieb noted, and Defendants contend, that "a glance down the aisle as she first entered it, *or at any point as she walked along*, would have shown her the boxes on the floor." 104 S.E.2d at 747 (emphasis added). In this case, Plaintiff did not have the same amount of time to notice and avoid the pallets. The timeline is more similar to Hewitt, where the plaintiff almost immediately encountered the six-inch drop into the boiler room. Here, Plaintiff had, at most, a few seconds to notice the pallets but did not do so because she was looking for employee aid.

While the present case shares some similarities with Gottlieb and Tazewell, the facts, considered in the light most favorable to Plaintiff, could lead reasonable people to disagree as to whether Plaintiff was negligent. Like the boxes in Gottlieb and Tazewell, the pallets were clearly visible to anyone standing in the TLE customer area. But Plaintiff entered through a door with a window that was least partially obscured. Plaintiff testified that the window was obscured and that she did not look through it. (Pl.'s Dep. 32:15–24). Whether Plaintiff should have made a greater effort to look through the window, as Defendants suggest, cannot be decided as a matter of law. Similarly, when Plaintiff went through the door, she looked towards the registers, hoping to see a Wal-Mart employee. Three steps later, her foot caught the pallets, and she fell. Whether Plaintiff's actions constituted negligence in these circumstances is for the trier of fact, not the court, to decide.

IV. **CONCLUSION**

In viewing the facts in the light most favorable to Plaintiff, there exist genuine issues of material fact as to whether the pallets were open and obvious and whether Plaintiff was

contributorily negligent. Virginia case law calls for a totality of the circumstances analysis, and a reasonable juror could rule either for Plaintiff or Defendants based on the facts alleged. For these reasons, Defendants' Motion for Summary Judgment will be denied.

Entered this 4th day of October, 2016.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE